**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

KEVIN BROWN,

Plaintiff,

v.

100 KINGSHIGHWAY LLC,

ANTHEUS CAPITAL, LLC,

100 KINGSHIGHWAY DEVELOPER LLC,

MAC PROPERTY MANAGEMENT, L.L.C., dba MAC PM, LLC,

STUDIO GANG ARCHITECTS, LTD.,

JEANNE GANG,

CORE10 ARCHITECTURE, INC.,

CODE CONSULTANTS, INC.,

CLAYCO, INC.,

STOCK AND ASSOCIATES CONSULTING ENGINEERS, INC.,

GEORGE STOCK,

MAGNUSSON KLEMENCIC ASSOCIATES, INC.,

RON KLEMENCIC,

SACHS ELECTRIC COMPANY,

DELUCA PLUMBING LLC, and

NEST BUILDERS, INC., dba dbHMS,

Defendants.

Case No. 4:22-CV-1013-PLC

## FIRST AMENDED COMPLAINT

Comes now Plaintiff, Kevin Brown ("Plaintiff"), by and through counsel, and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action against Defendants 100 Kingshighway, LLC ("100 Kingshighway"); Antheus Capital, LLC ("Antheus"); 100 Kingshighway Developer, LLC ("Kingshighway Developer"); Mac Property Management, L.L.C., dba Mac PM, LLC ("MAC Property"); Studio Gang Architecture, Inc. ("Studio Gang"); Jeanne Gang ("Gang"); Core10 Architecture, Inc. ("Core10"); Code Consultants, Inc. ("Code Consultants"); Clayco, Inc. ("Clayco"); Stock and Associates Consulting Engineers, Inc. ("Stock and Associates"); George Stock ("Stock"); Magnusson Klemencic Associates, Inc. ("Magnussson Klemencic"); Ron Klemencic ("Klemencic"); Sachs Electric Company ("Sachs"); DeLuca Plumbing, LLC ("DeLuca"); and Nest Builders, Inc., dba dbHMS ("dbHMS") (collectively, "Defendants") for violations of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. §§ 3601-3619.

2. Defendants, who are the developers, contractors, builders, architects, civil engineers, and/ or owners of dwelling units and apartment complex, One Hundred Above the Park, a 316 unit housing community located at 100 N. Kingshighway Blvd. at West Pine in St. Louis, Missouri (the "Property"), failed to construct the Property in compliance with the FHAA's accessibility and usability requirements. Defendant's violations of the FHAA have serious and significant consequences for people with disabilities.

3. According to the 2010 Americans with Disabilities Study conducted by the U.S. Census Bureau, more than 56 million Americans (nearly one in five) have some form of

disability. Of that number, more than 3.6 million people over the age of 15 use wheelchairs, and that number is expected to increase as the population ages and medical care allows people with disabilities to live longer and fuller lives. Accessible housing is an essential means of ensuring that the many members of the community who have disabilities can fully participate in community life.

4. To address this need, Congress established architectural requirements in the FHAA for the design and construction of residential housing. The FHAA requires, builders, architects, owners, and others involved in the design, construction, and rental of housing to ensure that multifamily apartment complexes do not contain architectural barriers that impede access or usability or exclude individuals with disabilities from residing in and visiting the complexes.

5. Plaintiff seeks monetary, declaratory and injunctive relief arising from violations of the accessibility requirements of the FHAA. The FHAA requires that certain apartment complexes built for first occupancy after March 13, 1991 be designed and constructed with accessible and useable features for people with disabilities.

6. Plaintiff, Kevin Brown is a handicapped individual who uses a wheelchair which impacts his mobility and substantially limits his ability to engage in activities of daily living. Plaintiff brings this civil rights action against Defendants for failing to design and/ or construct apartments with accessible and useable features for people with disabilities as required by the FHAA. Defendant's apartment complex, One Hundred Above the Park is a multi-family dwelling, has numerous barriers to access. Therefore, Plaintiff seeks a declaration that Defendants' apartment complex violates federal law and an injunction requiring Defendants to comply with the requirements of the FHAA.

7. The Defendants' violations of the FHAA have thwarted Congressional efforts to eradicate housing discrimination against people with disabilities and rendered units and/or

facilities unavailable to people with disabilities. Enforcement of the FHAA against Defendant is necessary because of the extensive nature of the civil rights violations at apartments designed, constructed and/or owned by Defendant.

8. Through designing and constructing One Hundred Above the Park in violation of the FHAA, Defendants have communicated to that people with disabilities are not welcome at the Property and have rendered its units unavailable to and unsafe for people with disabilities. As a result, Plaintiff seeks monetary, declaratory, and injunctive relief to ensure that One Hundred Above the Park is made accessible to individuals with disabilities as required by federal law and to obtain compensation for the injuries that he has suffered, as alleged herein.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. § § 3613(a).

10. Plaintiff does not assert any state law claims.

11. Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) because Plaintiff's claims asserted herein arose, and a substantial part of the acts and omissions giving rise to such claims occurred, in this judicial district, Defendants do business in this judicial district, and Plaintiff's claims concern or otherwise relate to real property located in this judicial district.

## PARTIES

12. Plaintiff, Kevin Brown, is and, at all times relevant hereto, was a resident of the State of Missouri. Plaintiff is and, at all times relevant hereto, has been legally handicapped and is therefore a member of a protected class under the FHAA.

13. Defendant, 100 Kingshighway, LLC is a Delaware limited liability company and the owner of the real property and improvements the Property and the site identified by St.

Louis assessor parcel identification number 3883-9-125.000.

14. Upon information and belief 100 Kingshighway was an owner and through its agents and/ or employees participated in the design and/ or construction of the Property and it is believed to be responsible in part for non-compliant features of the Property.

15. Defendant, Antheus Capital, LLC is a limited liability company organized under the laws of New Jersey, and its principal office is located at 32 Dean Street in Englewood, New Jersey.

16. Upon information and belief Antheus was an owner of and through its agents and/ or employees participated in the design and/ or construction of the Property and it is believed to be responsible in part for non-compliant features of the Property.

17. Defendant, 100 Kingshighway Developer, LLC is a limited liability company organized under the laws of Delaware. Upon information and belief Kingshighway Developer was a developer and through its agents and/ or employees participated in the design and/ or construction of the Property and it is believed to be responsible in part for non-compliant features of the Property.

18. Defendant Mac Property Management, L.L.C., dba Mac PM, LLC, is a limited liability company under the laws of Illinois, and its principal office is located at 32 N. Dean Street in Englewood, New Jersey.

19. Upon information and belief Mac Property through its agents and/ or employees was actively involved with the planning, design, construction, and development of the Property, and the marketing of same and it is believed to be responsible in part for non-compliant features of the Property.

20. Defendant, Studio Gang Architects, Ltd. is a company incorporated under the laws of Illinois, and its principal office is located at 1520 West Division Street in Chicago, Illinois.

21. Studio Gang was the architect for One Hundred Above the Park and through its agents and/ or employees participated in the design and/ or construction of the Property and is believed to be responsible in part for any defects in the blueprint drawings and designs of non-compliant features of dwelling units and common use areas at One Hundred Above the Park.

22. Defendant, Jeanne Gang is an architect and is believed to be an officer and principal in Studio Gang. Gang is believed to be responsible in part for any defects in the blueprint drawings and designs of non-compliant features of dwelling units and common use areas at One Hundred Above the Park.

23. Defendant, Core10 Architecture, Inc., is a Missouri corporation with its principal office located at 4501 Lindell Boulevard in St. Louis, Missouri.

24. Upon information and belief Core10 was a contractor retained by Studio Gang and its agents and/ or employees participated in the design and/ or construction of the Property and it is believed to be responsible in part for non-compliant features of the Property.

25. Defendant, Code Consultants, Inc., is a Missouri corporation with its principal office located at 2043 Woodland Parkway in St. Louis, Missouri.

26. Upon information and belief Code Consultants through its agents and/ or employees participated in the design and/ or construction of the Property and it is believed to be responsible in part for non-compliant features of the Property.

27. Defendant, Clayco, Inc., is a Missouri corporation with its principal office located at 2199 Innerbelt Business Center Drive in St. Louis, Missouri.

28. Upon information and belief Clayco was the general contractor for One Hundred Above the Park and through its agents and/ or employees participated in the design and/ or construction of the Property, and it is therefore responsible for the design and construction of the non-compliant features of the Property.

29. Defendant, Stock and Associates Consulting Engineers, Inc. is a Missouri corporation with its principal office located at 257 Chesterfield Business Parkway in Chesterfield, Missouri.

30. Upon information and belief Stock and Associates was the civil engineer for One Hundred Above the Park and through its agents and/ or employees participated in the design and/ or construction of the Property, and it is therefore responsible in part for any defects in the blueprint drawings and designs of non-compliant features of the Property.

31. Defendant, George Stock is believed to be a civil engineer and an officer and principal of Stock and Associates. Upon information and belief Stock participated in the design and/ or construction of the Property and he is therefore responsible in part for any defects in the blueprint drawings and designs of non-compliant features of the Property.

32. Defendant, Magnuson Klemencic Associates, Inc., is a Washington corporation with its principal office located at 1301 5th Avenue in Seattle, Washington.

33. Upon information and belief, Magnusson Klemencic was a structural engineer and through its agents and/ or employees participated in the design and/ or construction of the property, and it is therefore responsible in part for any defects in the blueprint drawings and designs of non-compliant features of the Property.

34. Defendant, Ron Klemencic is believed to be the civil engineer and an officer and principal of Magnusson Klemencic. Upon information and belief Klemencic participated in the design and/ or construction of the Property and he is therefore responsible in part for any defects in the blueprint drawings and designs of non-compliant features of the Property.

35. Defendant, Sachs Electric Company is a Missouri corporation with its principal office located at 1572 Larkin Williams Road in Fenton, Missouri.

36. Upon information and belief, Sachs Electric through its agents and employees

participated in the design and/ or construction of the Property and it is believed to be responsible in part for non-compliant features of the Property.

37. Defendant, DeLuca Plumbing LLC is a Missouri limited liability company with its principal office located at 2466 Old Dorsett Road in Maryland Heights, Missouri.

38. Upon information and belief, DeLuca Plumbing through its agents and/ or employees participated in the design and/ or construction of the Property and it is believed to be responsible in part for non-compliant features of the Property.

39. Defendant Nest Builders, Inc., dba dbHMS is an Illinois corporation with its principal office located at 303 West Erie Street in Chicago, Illinois.

40. Upon information and belief, dbHMS through its agents and/ or employees participated in the design and/ or construction of the Property and it is believed to be responsible in part for non-compliant features of the Property.

41. In doing the acts or in omitting to act as alleged in this Complaint, each employee, officer or agent of each Defendant was acting in the course and scope of his or her actual or apparent authority or the alleged acts or omissions of each employee, officer, or agent was subsequently ratified and adopted by each Defendant as principal.

## STATUTORY AND REGULATORY FRAMEWORK

42. Congress enacted the FHAA design and construction accessibility requirements as part of a comprehensive revision of the FHAA to prohibit discrimination on the basis of disability. The debates and legislative history of the FHAA reflect Congressional findings that a person using a wheelchair or other mobility aid is just as effectively excluded from the opportunity to live in a particular dwelling by steps or thresholds at building or unit entrances and by too narrow doorways as by a posted sign saying “No Handicapped People Allowed.”

43. In considering the 1988 disability amendments to the FHAA, Congress stressed

that enforcement of civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including the "architectural barriers" erected by developers who fail to construct dwellings and public accommodations accessible to and useable by people with disabilities. HR. REP. NO. 100-711, at 25(1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2186.

44. In response to Congressional findings, the FHAA mandated that every multi-family apartment building containing four (4) or more units and built for first occupancy after March 13, 1991 ("covered multi-family dwellings") be subject to certain design and construction requirements. Congress specifically rejected the approach of requiring only a specific number or percentage of units be fully accessible. Instead, Congress decided that all covered multifamily dwellings units must comply with the Act's design and construction requirements.

45. Under the FHAA, all ground floor units as well as all units served by an elevator must comply with the following requirements:

a. There must be an accessible building entrance on an accessible route;

b. Public-use and common-use areas must be readily accessible to, and usable by, people with disabilities;

c. Doors into and within covered units must be sufficiently wide to allow passage by people who use wheelchairs;

d. There must be an accessible route into and through the dwelling;

e. Light switches, electrical outlets, thermostats and other environmental controls must be in accessible locations;

f. There must be reinforcements in bathroom walls that allow for the later installation of grab bars; and

g. There must be usable kitchens and bathrooms so that an individual who uses a wheelchair can maneuver about the space.

46. Congress viewed the accessibility requirements imposed by § 3604(f)(3)(C) as "modest." It did not intend to impose "unreasonable requirements" or a "standard of total accessibility," but rather saw the "basic features" required by § 3604(f)(3)(C) as amounting to "minimal standards" that would be "easy to incorporate in housing design and construction." Furthermore, according to the House Report, the § 3604(f)(3)(C) requirements could be met without making new multi-family housing "look unusual" and without "significant additional costs."

47. Pursuant to Congressional authority, the United States Department of Housing and Urban Development ("HUD") promulgated final FHAA design and construction regulations in January 1989, see 24 C.F.R § 100.205 (2008), and published the final Fair Housing Act Accessibility Guidelines on March 6, 1991 (hereinafter "FHAAG") which incorporates the requirements of the American National Standards Institute for buildings and facilities providing accessibility and usability for physically handicapped people, A117-I-1986 (hereinafter "ANSI"), see 56 Fed. Reg. 9472 (Mar. 6, 1991), and the Fair Housing Act Design Manual in August 1996, which was revised in August 1998.

## FACTUAL BACKGROUND

### The Property

48. One Hundred Above the Park is an apartment complex located at 100 N. Kingshighway Blvd. at West Pine. The Property consists of approximately 316 units in one building and the apartment complex is served by elevators.

49. The Property was designed and constructed for first occupancy after December 18, 2020.

50. The Property contains "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604 (f)(7).

51. The covered multifamily dwellings at the Property are subject to the requirements of 42 U.S.C. § 3604 (f). These include all ground floor units and units served by elevators.

52. Defendant's failure to design and construct the Property in compliance with 42 U.S.C. § 3604(f)(3)(C) occurred during the design and construction of the Property and continued during the marketing of all units for lease.

**Plaintiff's Investigation**

53. Plaintiff was researching apartments in the St. Louis area. Plaintiff visited the Property and looked at one or more units. Plaintiff observed that there were accessibility barriers that would interfere with his ability to access and use the facilities.

54. The existence of barriers and the lack of accessible features deterred Plaintiff from renting an apartment at the Property.

55. As a result of Defendant's non-compliance with the FHAA, Plaintiff, unlike persons without disabilities, cannot independently use the features of Property.

56. Defendant's apartments lack various mandatory elements required by the FHAA, to make the apartments accessible and useable for people with disabilities.

57. As a handicapped individual and advocate for same, Plaintiff is concerned whether apartments are accessible and useable for people with disabilities.

58. Plaintiff has been injured by the Defendant's discriminatory practices and failure to design and/or construct apartments that are constructed with accessible and useable features for people with disabilities as required by the FHAA. These injuries include experiencing discrimination and being deterred from renting at the Property. These blatant violations

effectively communicate that people with disabilities are not welcome in the Property.

59. Without injunctive relief, Plaintiff and others will continue to be unable to fully access and use the Property in violation of their rights under the FHAA.

**FHAA Violations**

60. The Defendant's violations of 42 U.S.C. § 3604(f)(3)(C) at the Property include, but are not limited to, those outlined below. These allegations represent just some of the evidence of the Defendant's failure to design and construct covered units and the public and common use areas in accord with 42 U.S.C. §3604(f)(3)(C) and are not intended as an exhaustive inventory of such violations. Plaintiff anticipates that an inspection of the Property will identify additional violations and non-compliant features at the Property.

61. Defendant has failed to design and/or construct public and common-use areas that are readily accessible to and usable by people with disabilities in compliance with 42 U.S.C. § 3604(f)(3)(C)(i) and 24 C.F.R. §100.205(c)(1) (2008). For example:

a. There is no accessible route provided in the Game Room to access the common area around the TV/Theatre Center, as the accessible route into the game room area is obstructed by noncompliant level change at the entry door threshold which is too high and impedes the ability of wheelchair uses to enter and exit effectively through the doorway;

b. The centralized mailbox center does not have accessible mailboxes, as some mailboxes are located above the required reach range and are, therefore, unusable by persons who use wheelchairs;

c. There are no accessible garages available to residents while non-accessible garages were available to residents;

d. One of the common use toilet room on the 7th floor of One Hundred on the Park does not provide 60" by 56" clear floor space due to obstruction of the vanity and curvilinear wall placement, the vanity lacks forward approach knee and toe clearance, and the water closet centerline is greater than 18 inches to the sidewall.

e. One of the common use toilet room on the 7th floor of One Hundred on the Park does not have the water closet positioned adjacent to a sidewall, the vanity lacks forward approach knee and toe clearance, and the toilet room entry door does not have the required maneuvering clearance on the pull side of the door.

62. Defendant has failed to design and/or construct accessible routes into and through all units within covered dwellings in compliance with 42 U.S.C. § 3604 (f)(3)(C)(iii)(I) and 24 C.F.R. § 100.205(c)(3)(i) (2008). For example: The interiors of units at the Property do not have a continuous accessible path of travel into and through the covered dwelling unit because the threshold at the exterior balcony door exceeds the allowable interior and exterior level change height so that disabled persons who use wheelchairs or scooters may have unimpeded access to the balcony;

63. Defendant has failed to design and/or construct usable bathrooms and kitchens such that an individual in a wheelchair can maneuver about the space in compliance with 42 U.S.C. § 3604(f)(3)(C)(iii)(IV) and 24 C.F.R. § l00.205(c)(3)(iv) (2008). For example, the interiors of units at the Property:

a. Do not have bathrooms with sufficient 30-inch by 48-inch clear floor space at vanity sinks allowing wheelchair uses the ability to make a centered approach to the element;

b. Do not have bathrooms with sufficient 30-inch by 48-inch clear floor space beyond the full inward arc swing of the door enabling wheelchair users the ability

to enter the bathroom and close the door behind them;

c. Do not have bathrooms with sufficient 30-inch by 48-inch clear floor space parallel to the shower stall and flush with the control wall;

d. Do not have bathrooms with vanity sinks with a removable base cabinet option at time of construction, allowing wheelchair users the ability to make minimal modifications to remove the lower cabinetry to gain a centered forward approach to the element;

e. Do not have kitchens with sufficient 30-inch by 48-inch clear floor space at sinks allowing wheelchair uses the ability to make a centered side approach to the element; and

f. Do not have kitchens with sufficient 30-inch by 48-inch clear floor space at sinks with a removable base cabinet at time of construction, allowing wheelchair users the ability to make minimal modifications to remove the cabinetry to gain a centered forward approach to the element.

64. Defendant has failed to design and/or construct light switches, electrical outlets, thermostats and other environmental controls in accessible locations in compliance with 42 U.S.C. § 3604 (f)(3)(C)(iii)(II) and 24 C.F.R. § 100.205(c)(3)(ii) (2008). For example, the interiors of units at the Property do not have environmental control such as thermostats and kitchen electrical outlets positioned within accessible range.

65. Further, by failing to provide the accessible and useable features required by 42 U.S.C. § 3604(f)(3)(C) at the Property for people with physical disabilities, including but not limited to those outlined above, Defendant has violated 42 U.S.C. § 3604(f)(1) and/or have discriminated against them in the terms, conditions or privileges of the rental of dwellings in violation of 42 U.S.C. § 3604(f)(2).

66. The discriminatory violations described above are not an exhaustive list of the Defendant's current violations of the FHAA because Plaintiff was unable to access and assess all areas of the subject premises due to the lack of accessibility encountered.

67. A complete list of the subject location's FHAA violations involving accessibility and affecting the Plaintiff as a wheelchair user, and the remedial measures necessary to remove same, will require entry of the Property and on-site inspection by Plaintiff's representatives pursuant to Rule 34 of the Federal Rules of Civil Procedure.

## VI. CAUSE OF ACTION
## Violation of the FHAA, 42 U.S.C. § 3601, et seq.

68. The allegations in the preceding paragraphs are incorporated by reference.

69. The Property contains residential apartment units that are "dwelling[s]" within the meaning of 42 U.S.C. § 3602(b).

70. At the Property, all ground-floor units and upper floor units served by elevators not in townhomes are "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7)(A), were built for first occupancy after March 13, 1991, and are subject to the design and construction requirements set forth in 42 U.S.C. § 3604(f)(3)(C) of the FHAA. The public-use and common-use areas of the Property are also subject to the design and construction requirements of 42 USC. § 3604(f)(3)(C).

71. Through the actions and inactions described above, the Defendants have:

a. discriminated in the rental of, or otherwise made unavailable or denied, dwellings to persons because of their disabilities in violation of 42 U.S.C. § 3604(f)(1);

b. discriminated against persons because of their disabilities in the terms, conditions or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of 42 U.S.C. § 3604(f)(2); and

c. failed to design and construct dwellings in compliance with the requirements mandated by 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations, 24 C.F.R. Part 100.205 (2008).

72. Defendants' discriminatory conduct has damaged Plaintiff.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court for entry of judgment against Defendants and for Plaintiff granting:

a. A declaratory judgment that at the commencement of this action Defendants were in violation of the specific requirements of the FHAA, described above, and the relevant implementing regulations of the FHAA;

b. An injunction, pursuant to 42 U.S.C. § 3613(c)(l)(a), enjoining Defendants, their respective officers, directors, employees, agents, successors, assigns and all other persons in active concert or participation with any of them, both temporarily during the pendency of this action, and permanently from:

1. with regard to the Property, failing or refusing to bring the covered dwelling units and the public use and common use areas into compliance with the requirements of the Fair Housing Amendments Act ("FHAA") 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations, the Americans with Disabilities Act ("ADA") and the applicable regulations; to comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court; and to perform or allow such other acts as may be necessary to effectuate any judgment of this Court against them; failing or refusing to design and construct any covered multifamily dwellings in the future in compliance with 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations; and

2. failing or refusing to take such steps as will eliminate, to the fullest

extent practicable, the lingering effects of the Defendants' unlawful housing practices.

c. An injunction enjoining Defendants from failing or refusing to permit the survey of any of their covered properties that were designed and/or built by the Defendants and any retrofits ordered by the Court to be made at such property, to also comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court, and to perform or allow such other acts as may be necessary to effectuate any judgment against the Defendants;

d. Award such damages as would fully compensate Plaintiff for his injuries incurred as a result of the Defendants' discriminatory housing practices and conduct, pursuant to 42 U.S.C. § 3613(c)(1)(a);

e. Award such punitive damages against Defendants as is proper under law, pursuant to 42 U.S.C. § 3613(c)(1)(a);

f. Award of costs of suit;

g. Award of reasonable attorneys' fees, expenses, and monitoring fees pursuant to 42 U.S.C. § 3613(c)(2), and other principles of law and equity; and

h. Award of such other relief the Court deems just, equitable and appropriate.

**Dated**: May 8, 2023

Respectfully submitted,

**JONATHAN F. ANDRES P.C.**

By: /s/ Jonathan F. Andres
Jonathan F. Andres MO39531
1127 Hoot Owl Rd.
St. Louis, MO 63005
Tel. (636) 633-1208
Email: andres@andreslawpc.com

*Attorney for Plaintiff*

**DEFENDANTS TO BE SERVED:**

100 KINGSHIGHWAY LLC
c/o National Registered Agents, Inc.
120 S. Central Ave.
Clayton, MO 63105

ANTHEUS CAPITAL, LLC
c/o Officer in Charge
32 N. Dean St., 2nd Floor
Englewood, NJ 07631

100 KINGSHIGHHWAY DEVELOPER LLC
c/o National Registered Agents, Inc.
1209 Orange St.
Wilmington, DE 19801

MAC PROPERTY MANAGEMENT, L.L.C.
c/o National Registered Agents, Inc.
120 S. Central Ave.
Clayton, MO 63105

STUDIO GANG ARCHITECTS, LTD.
c/o Patricia A. Harris, Esq.
Registered Agent
8651 Highway N., Suite 100
Lake St. Louis, MO 63067

JEANNE GANG
1520 W. Division St.
Chicago, IL 60642

CORE10 ARCHITECTURE, INC.
c/o Incorp Services, Inc.
Registered Agent
2847 S. Ingram Mill Rd., Suite A100
Springfield, MO 65804

CODE CONSULTANTS, INC.
c/o Terry Schultz
Registered Agent
2043 Woodland Parkway
Suite 300
St. Louis, MO 63146

CLAYCO, INC.
c/o CSC-Lawyers Incorporating Service Company
Registered Agent
221 Bolivar St.
Jefferson City, MO 65101

STOCK and ASSOCIATES CONSULTING ENGINEERING, INC.
c/o CT Corporation
Registered Agent
120 S. Central Ave.
Clayton, MO 63105

GEORGE STOCK
257 Chesterfield Business Pkwy
Chesterfield, MO 63005

MAGNUSSON KLEMENCIC ASSOCIATES, INC.
c/o CT Corporation
Registered Agent
120 S. Central Ave., Suite 400
Clayton, MO 63105

RON KLEMENCIC
1301 Fifth Avenue
Suite 3200
Seattle, WA 98101

SACHS ELECTRIC COMPANY
c/o CSC-Lawyers Incorporating Service Company
Registered Agent
221 Bolivar St.
Jefferson City, MO 65101

DELUCA PLUMBING LLC
c/o John B. DeLuca
Registered Agent
8645 Delport Drive
St. Louis, MO 63114

NEST BUILDERS, INC.
c/o Caleb Richard Wagner
Registered Agent
423 Olive St.
Kansas City, MO 64124